UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SYLVIA M. RIVERA,                                           :
                                                            :
                     Plaintiff,       :  **MEMORANDUM**
                                                            :  **DECISION AND ORDER**
      -against-                                       :
                                                            :  19-cv-2006 (BMC)
NANCY A. BERRYHILL, Acting                                  :
Commissioner of the Social Security                         :
Administration,                                             :
                                                            :
                     Defendant.        :
----------------------------------------------------------- X

**COGAN**, District Judge.

        Plaintiff challenges the decision of an Administrative Law Judge ("ALJ") that she was not disabled as defined by the Social Security Act ("Act"), 42 U.S.C. § 401, for the period from June 19, 2015 through March 27, 2017. In a partially favorable decision, the ALJ held that plaintiff only became disabled under the Act on March 28, 2017, her 55th birthday. The parties do not dispute that plaintiff suffered from fibromyalgia during the relevant time period. However, the ALJ concluded that plaintiff, despite her diagnosis, retained the residual functional capacity ("RFC") to perform light work.

        Plaintiff contends the ALJ committed three errors: (1) the ALJ erred by failing to give controlling weight to her treating physician's opinion; (2) the ALJ lacked substantial evidence to determine she maintained the RFC to perform light work; and (3) the hypothetical that the ALJ posed to the vocational expert and the expert's response were both improper. For the reasons that follow, I grant defendant's cross-motion for judgment on the pleadings, deny plaintiff's motion, and dismiss the action.

# DISCUSSION

## I. Treating Physician Rule

The treating physician rule "mandates that the medical opinion of a [plaintiff's] treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). However, the ALJ may set aside the opinion of a treating physician that is contradicted by the weight of other evidence in the record. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). A treating physician's opinion may also be rejected if it is internally inconsistent or otherwise uninformative. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ must provide "good reasons" for affording limited weight to the treating source's opinion and more weight to a non-treating source. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The "mere diagnosis of fibromyalgia without evidence as to the severity of symptoms and limitations does not mandate a finding of disability." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). With respect to pain, the Second Circuit has explained that "disability requires more than a mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude substantial gainful employment." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).

### A. Dr. Stein's Inconsistent Opinions

In August 2015, plaintiff's treating physician, Dr. Stein completed a thorough medical review of plaintiff. According to Dr. Stein's notes, plaintiff indicated she was "feeling well"; "not in acute distress"; denied fatigue, tiredness and anxiety; had no pain in her shoulders,

elbows, wrists, hands, hips, knees, ankles, feet, or fingers; had normal range of motion and no swelling; and maintained normal reflexes, range of motion and normal grip strength. This medical evaluation did not mention that plaintiff's fibromyalgia would place restrictive limitations on her ability to stand, sit, carry objects, mentally function, or otherwise continuing working. According to his notes, Dr. Stein recommended to plaintiff that she return within "2 months or sooner if necessary." But plaintiff did not return to see Dr. Stein until 11 months later.

After plaintiff's next visit on July 1, 2016, however, Dr. Stein's opinion abruptly changed. During this visit, Dr. Stein did not conduct a thorough medical evaluation of plaintiff Rather, plaintiff merely requested he complete a check box form questionnaire provided by her attorney. This form did not provide a space for Dr. Stein to further explain his opinions, so he did not provide a narrative in the form explaining the basis of his new assessment.

On the check box form, Dr. Stein indicated that plaintiff was only able to sit for 1 hour and stand/walk for 1 hour in an 8-hour workday and that she could never lift or carry more than 5 pounds. He further found that plaintiff would be cogitatively "off task" more than 41% of the time in a day, would need 15 minutes of unscheduled breaks every 30 minutes, and would miss more than 3 days of work each month due to her various impairments. Lastly, he concluded that plaintiff's fibromyalgia, evidenced by her tender and trigger points, precluded even sedentary work on or before June 19, 2015.

This dire assessment also determined that plaintiff's restrictive limitations retroactively existed even in June 2015. This stood in stark contrast to his previous August 2015 evaluation, which painted a very difficult picture of plaintiff's overall health. Because he did not provide a narrative, it is difficult to reconcile Dr. Stein's opinion that plaintiff's impairments precluded even sedentary work on or before June 19, 2015 with his medical assessment from August 2015,

3

when plaintiff indicated, *inter alia*, she was "feeling well"; "not in acute distress"; denied fatigue, tiredness and anxiety; had no pain in the majority of her body parts; had normal range of motion; and maintained a normal range of motion.

When looking at the two opinions, it is as if Dr. Stein is describing completely different versions of plaintiff. Notably, there is nothing in Dr. Stein's August 2015 notes that indicates plaintiff was limited in walking, her constant need to take unscheduled breaks for the majority of the day, or that she would be mentally "off task" over 41% of the day. Dr. Stein likely could have documented this important information had plaintiff either complained of these issues or had he determined these limitations to apply to her in August 2015. But he did not. Thus, Dr. Stein's varying opinions on plaintiff's medical condition from June 2015 to August 2015 are inconsistent, and the ALJ properly afforded Dr. Stein's check box form from July 2016 limited weight because his credibility had been severely undermined. See Camille v. Colvin, 652 F. App'x 25, 27 (2d Cir. 2016) (substantial evidence supports the limited weight that the ALJ provided the treating physician, because it was in conflict with content in that doctor's own clinical notes, in conflict with the opinion of another physician, and he did not provide a narrative for each of the check-box forms he completed).

It is obvious that plaintiff suffers from fibromyalgia and indeed the ALJ expressly found fibromyalgia to be one of plaintiff's severe impairments. But the ALJ, before deciding that plaintiff's impairments were not shown to be so severe as to preclude her from performing light work, was not required to defer to plaintiff's treating physician's opinion when his prior notes undermined his subsequent opinion and was also contradicted by substantial medical evidence in the record.

### B. Opinions of Other Physicians

The ALJ properly determined that Dr. Stein's opinion of plaintiff's disability and limitation to be "not supported by the medical evidence or clinical findings of record" because Dr. Stein's opinion was also contradicted by the weight of other evidence in the record, namely, the opinions of a myriad of other physicians who had also treated plaintiff.

<u>First</u>, after examining plaintiff in March and May 2015, Dr. Singh consistently assessed plaintiff had normal memory, attention span, and concentration; no tenderness or spasm in the lumbar spine; full motor strength in the upper and lower extremities; normal sensation, and full power in all muscle groups. Plaintiff did not mention to Dr. Singh any muscle weakness, severe joint stiffness, or severe pain. This evidence contradicts Dr. Stein's assessment that, merely a month later, plaintiff's condition was so severe that she could never lift more than 5 pounds, need to take a 15-minute break every half an hour, or be "off task" for over 41% of the day.

<u>Second</u>, plaintiff was also examined by Dr. Fkiaras in September 16, 2015. He assessed that plaintiff was in no acute distress; had a normal gait; did not use assisted devices; did not need help changing for the exam or getting on or off the exam table; was able to rise from a chair without difficulty; maintained a full range of motion in her upper and lower extremities; and had intact hand and finger dexterity. Although his assessment was not as dire as Dr. Stein's, Dr. Fkiaras noted that plaintiff expressed experiencing sharp pain and that she claimed she could not stand continuously for more than 10 minutes. Armed with this information, Dr. Fkiaras nonetheless determined that plaintiff was only restricted from activities that required "great exertion," such as heavy lifting, carrying, pushing, and pulling. Unlike Dr. Stein, Dr. Fkiaras did

not find that plaintiff's complaints warranted a finding that she could never lift more than 5 pounds or that she would need a 15-minute break every half an hour.

Third, in February 2017, Dr. Hahn, determined that plaintiff exhibited a normal mental status and ordinary motor strength in her extremities. Complaining only of back pain, plaintiff did not express to him any issues of muscle weakness, severe joint stiffness, or severe pain. Contrary to Dr. Stein's determination, Dr. Hahn did not notice any remarkable cognitive limitations for plaintiff. This evidence is incompatible with Dr. Stein's assessment that plaintiff suffered from a severe disability precluding her from performing light work on or before June 19, 2015, and that she would be "off task" for a significant portion of the day.

Fourth, in March 2017, dissimilar to Dr. Stein's restrictive assessment, Dr. Thyagarai determined that plaintiff was in no acute distress, and had functional ranges of motion in all her extremities; tenderness only in the cervical and lumbar spines; near to full muscle strength; normal sensation; no joint, neck, or muscle pain or weakness; and noted that plaintiff only complained of lower back and hip pain. During this visit, plaintiff did not mention any severe pain or stiffness. Based on this information, it is again difficult to conclude that plaintiff could never lift more than 5 pounds or needed to sit down ever half an hour.

Fifth, Dr. Dolan and Dr. Nanduri both opined that plaintiff generally exhibited a normal attention span, concentration and had an intact memory, undermining Dr. Stein's specific finding that plaintiff would be "off task" more than 41% of the day.

Reviewing the foregoing information, along with the rest of plaintiff's medical record, Dr. Quinlan, a state agency medical consultant, opined that plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand/walk at least 2 to 4 hours per day; and sit with normal breaks for about 6 hours per day. He also concluded that plaintiff

had no manipulative limitations.  Although not perfectly aligned with the various physicians, Dr. Quinlan's opinion is nevertheless more consistent with the substantial evidence in the record, compared to Dr. Stein's, especially since no other physician ever mentioned plaintiff's inability to walk for more than 1 hour a day, her need to constantly sit every half an hour, or that she would be "off task" more than 41% of the time.

On the other hand, it is exceedingly difficult, if not impossible, to reconcile Dr. Stein's opinion that plaintiff was precluded from even sedentary work beginning from June 19, 2015, when multiple other physicians who also examined plaintiff during and after that date concluded otherwise.  Accordingly, because Dr. Stein's medical opinion was inconsistent with the overwhelming evidence in the record, the ALJ had "good reason" for affording limited weight to Dr. Stein, while finding Dr. Quinlan more credible.

### C.  Plaintiff's Testimony

Furthermore, the ALJ was not required to credit plaintiff's testimony about the severity of her pain and the functional limitations it caused.  "Statements about your pain and other symptoms will not alone establish you are disabled." 20 C.F.R. § 404.1529(a).  Thus, "[w]here there is conflicting evidence about a claimant's pain, the ALJ's must make credibility findings." Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).

Here, the ALJ considered substantial evidence that undermined plaintiff's testimony and thus properly discredited her testimony.  Plaintiff testified that she was functionally limited by her fibromyalgia and had pain all over her body all over her body during the disputed period. The ALJ did not find her testimony credible because plaintiff did not seek medical treatment from Dr. Stein during the time she allegedly was suffering severe and chronic pain, despite his

recommendation that she return to see him "if necessary." Although plaintiff sought treatment from Dr. Stein in the months of March, May, and August 2015, and visited him again in July 2016 to obtain the questionnaire form at the request of her attorney, there were no treatment records from Dr. Stein beginning from August 2015 until October 2017.

Also, substantial evidence in the record specifically contradicts plaintiff's testimony. For example, she visited other physicians between October 2015 and March 2017 for lower back issues; however, she never complained about "severe pain all over her body" (i.e., burning, stabbing, chronic intense pain) during these medical examinations. Notably, the medical records of Drs. Singh, Hahn, and Thyagarai are devoid of these specific and material complaints.

Plaintiff's failure to seek any medical attention for her alleged debilitating condition throughout her entire body during the crucial time period is significant. See Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989) (holding the Commissioner may properly attach significance to plaintiff's failure to seek medical attention during the crucial period); Diaz-Sanchez v. Berryhill, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) ("Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations.").

In sum, plaintiff's self-serving testimony was undermined by substantial evidence in the record, and her failure to seek medical treatment from Dr. Stein, despite his recommendation to her to return if necessary, serves as circumstantial evidence that her condition was not as severe as she attempted to portray it during her testimony.

## II.  Substantial Evidence

Plaintiff also contends that there was no competent evidence to support the ALJ's RFC determination. As in most cases, the record is not entirely one-sided, but I reject plaintiff's contention and find there is more than substantial evidence.

Judicial review of disability benefit determinations is governed by 42 U.S.C. §§ 421(d) and 1383(c)(3), which expressly incorporates the standards established by 42 U.S.C. § 405(g). In relevant part, § 405(g) adopts the familiar administrative law review standard of "substantial evidence," i.e., that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, his decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Castano v. Astrue, 650 F. Supp. 2d 270, 277 (E.D.N.Y. 2009) (citation omitted).

Here, there is "more than a mere scintilla" of evidence to support the ALJ's conclusion. Although the record demonstrated plaintiff's generalized pain in the upper and lower extremities, the ALJ also found that plaintiff's impairments were not severe to the point to preclude a reduced

range of light work, relying on the opinion of Dr. Quinlan, who indicated plaintiff was able to sit, stand, and walk for six hours in an eight-hour workday and to lift and carry 20 pounds occasionally and 10 pounds frequently.[1]

More importantly, Dr. Quinlan's opinion that plaintiff was able to sit and stand for several hours throughout the day and lift and carry materials was corroborated by other substantial medical evidence in the record: (1) Dr. Singh determined plaintiff had full motor strength in her upper and lower extremities and a normal gait in March and May of 2015, corroborating Dr. Quinlan's determination that plaintiff was able to sit and walk for six-hours in an eight-hour workday and lift or carry at least 10 pounds frequently; (2) Dr. Quinlan's assessment was also corroborated with the evidence contained in Dr. Fkiaras' very thorough and detailed medical report describing how plaintiff could walk without difficulty; needed no help changing for exam or getting on or off the exam table; and was able to rise from her chair without difficulty; (3) Dr. Hahn noted plaintiff had full motor strength in her extremities and had not trouble walking or maintaining her balance in February 2017, bolstering Dr. Quinlan's determination that plaintiff had the ability to walk throughout the day with multiple breaks; and (4) Dr. Thyagarai opined that plaintiff had functional ranges of motion in all extremities and full muscle strength in March 2017, further corroborating Dr. Quinlan's determination that plaintiff maintain the RFC to perform light work.

---

[1] Although the ALJ incorrectly described Dr. Quinlan as an examining source, this mistake alone, does not warrant a remand. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (holding remand is unnecessary where there is no reasonable likelihood that remand will alter the ALJ's determination). Also, Dr. Quinlan's assessment was not only based upon, but also consistent with, the substantial medical evidence in this case.

### III. Hypothetical Posed

Lastly, plaintiff claims the ALJ's hypothetical to the vocational expert (VE) was deficient for two reasons: (1) it did not contain Dr. Stein's limitation that plaintiff would be mentally "off task" over 41% of the day; and (2) that the VE erroneously assumed simple, routine work was the same as unskilled work. I disagree. When determining plaintiff's RFC, the ALJ's hypothetical was not improper and the ALJ properly relied on the vocational expert's testimony that an individual with comparable limitations to plaintiff could perform a myriad of jobs available in the national economy.

Contrary to plaintiff's assertion, an ALJ is not required to include in her hypothetical symptoms and limitations that she has reasonably rejected. See Priel v. Astrue, 453 F. App'x 84, 87-88 (2d Cir. 2011) (citation omitted). In this case, the overall record did not support the extreme limitation that plaintiff would be "off task" for over 41% of the day beginning from June 2015. Plaintiff did not specifically seek mental health treatment until March 2017, the month of her 55th birthday; Dr. Stein's mental status findings concerning plaintiff were unremarkable until August 2015; and he did not even mention plaintiff being "off task" until July 2016, the date he was asked to complete a check box questionnaire by plaintiff.

More importantly, substantial evidence in the record contradicted Dr. Stein's minority opinion and thus the ALJ properly excluded it from the hypothetical posed to the VE. First, in May 2015, Dr. Singh completed a neurological examination of plaintiff and reviewed her MRI results, which "revealed normal," also documenting that plaintiff exhibited a normal attention span and concentration. Second, in September 2015, Dr. Dolan conducted a detailed mental

status examination of plaintiff and opined that she was able to follow and understand simple directions; learn new tasks; make appropriate decisions; and adequately relate with others. And, third, Dr. Nanduri's examination of plaintiff in December 2017 revealed that plaintiff had a normal attention span, concentration and an intact memory.

And plaintiff's contention that the VE erred by assuming simple, routine work was the same as unskilled work is also unpersuasive. Unskilled work is worked that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The Second Circuit has held that carrying out simple instructions falls within the scope of performing unskilled work. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) ("The ALJ found that Petitioner's mental condition did not limit her ability to perform unskilled work, including carrying out simple instructions [.]").

Based on the medical records, the ALJ, relying on the vocational expert's testimony, had substantial evidence to conclude plaintiff could perform the duties of a routing clerk, officer helper, and/or order caller. The findings of Drs. Singh, Dolan, and Nanduri, as I noted above, all demonstrated plaintiff had a normal attention span, concentration and an intact memory, so the ALJ's ultimate decision, notwithstanding the exact wording of the posed hypothetical or the VE's word choice, would remain the same. See id. (remand is unnecessary where there is no reasonable likelihood that remand will change the ALJ's determination).

## **CONCLUSION**

Plaintiff's motion for judgment on the pleading [13] is denied, and the Commissioner's

cross-motion for judgment on the pleading [17] is granted.  The complaint is dismissed.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                                                 _____
                                                                                           U.S.D.J.

Dated:  Brooklyn, New York
         December 28, 2019